IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


LANITA KEITH,

                    Plaintiff,

vs.                                        Case No. 15-1091-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

                    Defendant.


MEMORANDUM AND ORDER

       This is an action reviewing the final decision of the
Commissioner of Social Security denying the plaintiff disability
insurance benefits and supplemental security income payments.
The matter has been fully briefed by the parties.

**I.  General legal standards**

       The court's standard of review is set forth in 42 U.S.C.
§ 405(g), which provides that "the findings of the Commissioner
as to any fact, if supported by substantial evidence, shall be
conclusive."  The court should review the Commissioner's
decision to determine only whether the decision was supported by
substantial evidence and whether the Commissioner applied the
correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984
(10th Cir. 1994).  Substantial evidence requires more than a
scintilla, but less than a preponderance, and is satisfied by

1

such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

     The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that

2

they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step

3

requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis.  Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993).   At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy.  Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993).  The Commissioner meets this burden if the decision is supported by substantial evidence.  Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC).  This RFC assessment is used to evaluate the claim at both step four and step five.  20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II.  History of case

On June 13, 2014, administrative law judge (ALJ) Rhonda Greenberg issued her decision (R. at 15-26).  Plaintiff alleges that she had been disabled since January 10, 2010 (R. at 15). Plaintiff met the insured status requirements for social security disability benefits through December 31, 2013 (R. at

18).  At step one, the ALJ found that plaintiff did not engage in substantial gainful activity since her alleged onset date (R. at 18).  At step two, the ALJ found that plaintiff had a severe combination of impairments (R. at 18).  At step three, the ALJ found that plaintiff's impairments, including substance abuse disorders, meet listed impairments 12.04, 12.06 and 12.09 (R. at 18).

Absent plaintiff's substance use, plaintiff would still have severe impairments (R. at 20).  Absent substance use, plaintiff's impairments do not meet or equal a listed impairment (R. at 20).  After determining plaintiff's RFC absent substance use (R. at 22), the ALJ determined at step four that plaintiff would be unable to perform past relevant work (R. at 24).  At step five, the ALJ found that, absent substance use, plaintiff could perform a significant number of jobs in the national economy (R. at 25).  The ALJ concluded that, absent substance use, plaintiff was not disabled (R. at 25-26).

**III.  Did the ALJ err by failing to consider all of the limitations set forth by Dr. Henderson?**

On January 13, 2014, Dr. James Henderson performed a consultative examination on the plaintiff, and offered his opinions regarding plaintiff's physical limitations (R. at 733-742).  Dr. Henderson opined that plaintiff would be limited to occasional handling, fingering, feeling and pushing/pulling with

the dominant right hand, frequent handling with the left hand, and occasional fingering, feeling, and pushing/pulling with the left hand (R. at 739).[1]  Dr. Henderson based these opinions on plaintiff's carpal tunnel syndrome, the positive tinel bilaterally,[2] and neuropathy at the top of all digits (R. at 739).  In his evaluation, Dr. Henderson found that tinel was positive bilaterally (R. at 734), and also found diminished sensation in the fingertips and thumbs bilaterally (R. at 735).  Dr. Henderson noted plaintiff has a history of right shoulder reconstruction, a history of injury to the right hand with limited extension of the 4th and 5th digits at the PIP joint, grip strength and dexterity preserved, and no atrophy.  He found diminished sensation in the fingertips bilaterally suggesting more neuropathic findings.  This may limit some of the fine finger feeling in both hands (R. at 736).

At step two, when determining what impairments were severe, the ALJ stated that there is "little or no evidence" that the injury to the right hand with reconstruction of the 4th and 5th digits, a right shoulder injury, or bilateral carpal tunnel syndrome, with numbness and tingling to all fingertips, either clinically or diagnostically would result in significant work

---

[1] According to the form, occasional means up to 1/3 of the time and frequent means from 1/3 to 2/3 of the time (R. at 739).

[2] Tinel's sign is a sign that a nerve is irritated.  Tinel's sign is positive when lightly banging over the nerve elicits a sensation of tingling or "pins and needles,' in the distribution of the nerve.  For example, in carpal tunnel syndrome, where the median nerve is compressed at the wrist, the test for Tinel's sign is often positive, eliciting tingling in the thumb, index, and middle fingers.  Webster's New World Medical Dictionary, (3rd ed., 2008 at 424).

related functional limitations.  The ALJ noted the report of Dr. Henderson, and specifically noted no neurological deficits, tenderness, spasms, atrophy, instability, deformity or positive impingement signs.  Based on this evidence, the ALJ found that plaintiff's impairments of history of right hand injury, right shoulder injury and carpal tunnel syndrome are non-severe (R. at 20).

Although the ALJ stated that there is "little or no evidence" that plaintiff's right hand injury, right shoulder injury and carpal tunnel syndrome would result in significant work related functional limitations (R. at 20), the ALJ later noted that Dr. Henderson opined that plaintiff was limited to occasional handling, fingering, feeling and pushing/pulling with the dominant right hand, and occasional fingering, feeling and pushing/pulling with the left hand (R. at 23).  The opinions of Dr. Henderson constitutes clear evidence that plaintiff has significant work related functional limitations in the use of her hands; however, the ALJ failed to indicate what weight, if any, he gave to this medical opinion evidence.

An ALJ must evaluate every medical opinion in the record. Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004).  This rule was recently described as a "well-known and overarching requirement."  Martinez v. Astrue, 2011 WL 1549517 at *4 (10th Cir. Apr. 26, 2011).  Even on issues reserved to the

Commissioner, including plaintiff's RFC and the ultimate issue
of disability, opinions from any medical source must be
carefully considered and must never be ignored.  Social Security
Ruling (SSR) 96-5p, 1996 WL 374183 at *2-3.  The ALJ "will"
evaluate every medical opinion that they receive, and will
consider a number of factors in deciding the weight to give to
any medical opinion.  20 C.F.R. §§ 404.1527(c), 416.927(c).  It
is clear legal error to ignore a medical opinion.  Victory v.
Barnhart, 121 Fed. Appx. 819, 825 (10th Cir. Feb. 4, 2005).
Furthermore, according to SSR 96-8p:

> The RFC assessment must always consider and
> address medical source opinions. If the RFC
> assessment conflicts with an opinion from a
> medical source, the adjudicator must explain
> why the opinion was not adopted.

1996 WL 374184 at *7.

     Although the ALJ mentioned the opinions of Dr. Henderson
regarding plaintiff's limitations in the use of his hands, the
ALJ never indicated why he did not include these limitations in
his RFC findings.  In fact, the ALJ stated that there is little
or no evidence that plaintiff's right hand injury, right
shoulder injury or plaintiff's carpal tunnel syndrome would
result in significant work related functional limitations
despite the opinions offered by Dr. Henderson that plaintiff had
limitations in the use of her hands.  The ALJ did not clearly

explain why he did not adopt the limitations in the use of her hands as set forth by Dr. Henderson.

Although the ALJ never specifically indicated what weight he was according to the hand use limitations set forth by Dr. Henderson, the ALJ, as noted above, did discuss some of the findings in the report of Dr. Henderson, and specifically noted no neurological deficits, tenderness, spasms, atrophy, instability, deformity or positive impingement signs.  The ALJ concluded that there was little or no evidence that any of the reported symptoms or signs would result in significant work related functional limitations (R. at 20).  However, the ALJ did not cite to any medical evidence in support of this assertion. Neither did the ALJ cite to any medical evidence that the lack of certain symptoms or signs indicates a lack of functional limitations. Furthermore, the ALJ did not mention or address the statement of Dr. Henderson that plaintiff's carpal tunnel syndrome, the positive Tinel's sign bilaterally, and the neuropathy at the top of all digits were the basis for his opinion that plaintiff had limitations in the use of her hands (R. at 739).  Neither did the ALJ address the statement of Dr. Henderson that diminished sensation in the fingertips bilaterally suggested more neuropathic findings, which may limit some of the fine finger feeling in both hands (R. at 736).

There is no medical evidence or medical opinion evidence disputing the findings of Dr. Henderson.

An ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculations, or lay opinions. McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir. 2002).[3]  The adjudicator is not free to substitute his own medical opinion for that of a disability claimant's treatment providers and other medical sources.  Hamlin v. Barnhart, 365 F.3d 1208, 1221 (10th Cir. 2004).  An ALJ's broad assertion that the medical evidence identifies no clinical signs typically associated with musculoskeletal pain, such as muscle atrophy, deformity, loss of motion, or neurological deficits was found to be an improper justification for disregarding an opinion of a treating source.  The ALJ is not a medical expert on identifying the clinical signs typically associated with chronic musculoskeletal pain.  An ALJ is not entitled to sua sponte render a medical judgment without some type of support for his determination.  The ALJ's duty is to weigh conflicting evidence and make disability determinations; he is not in a position to render a medical judgment.  Bolan v. Barnhart, 212 F. Supp.2d 1248, 1262 (D. Kan. 2002).

---

[3] There is no reason this principle should not apply to the opinions of an examining medical source.

The ALJ in this case made the very same error as the court
found in Bolan.  In the absence of any medical evidence that
plaintiff does not have clinical or diagnostic signs that would
result in significant work related functional limitations in the
use of her hands as set forth by Dr. Henderson, the ALJ
overstepped his bounds into the province of medicine.  Miller v.
Chater, 99 F.3d 972, 977 (10th Cir. 1996).

The ALJ did not cite to any medical opinion in support of
his finding no limitation in the use of plaintiff's hands.
However, an exact correspondence between a medical opinion and
the RFC is not required.  In reaching his RFC determination, an
ALJ is permitted, and indeed required, to rely on all of the
record evidence, including but not limited to medical opinions
in the file.  That said, in cases in which the medical opinions
appear to conflict with the ALJ's decision regarding the extent
of a plaintiff's impairment(s) to the point of posing a serious
challenge to the ALJ's RFC assessment, it may be inappropriate
for the ALJ to reach an RFC determination without expert medical
assistance.  Wells v. Colvin, 727 F.3d 1061, 1071–1072 (10th Cir.
2013) (in Wells, the ALJ rejected 3 medical opinions, finding
that they were inconsistent with the other evidence in the file;
the court directed the ALJ, on remand, to carefully reconsider
whether to adopt the restrictions on plaintiff's RFC detailed in

the medical opinions, or determine whether further medical evidence is needed on this issue).

The court finds, on the facts of this case, that the medical opinions of Dr. Henderson clearly conflict with the ALJ's decision to the point of posing a serious challenge to the ALJ's RFC assessment.  An ALJ may reject a treating or examining physician's opinion outright only on the basis of contradictory medical evidence.  The ALJ cannot substitute his own medical opinion for that of Dr. Henderson and conclude that the clinical and diagnostic signs do not support functional limitations.  The ALJ offered no evidentiary support for his determination that the clinical and diagnostic signs do not support functional limitations in the use of plaintiff's hands.

The court therefore finds that substantial evidence does not support the ALJ's RFC findings.  This case shall be remanded in order for the ALJ to give proper consideration to the opinions of Dr. Henderson regarding limitations in the use of plaintiff's hands.  The ALJ should also ascertain whether additional medical evidence should be obtained on this issue.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 29th day of April 2016, Topeka, Kansas.


                         s/Sam A. Crow
                         Sam A. Crow, U.S. District Senior Judge